**TEXAS EMPLOYERS' INS. ASS'N v.
MOYERS et al.**

**No. 4467.**

Court of Civil Appeals of Texas. Texarkana.
Feb. 27, 1934.

Rehearing Denied March 15, 1934.

Lawther, Cox & Cramer, of Dallas, B. M.
McMahan, of Greenville, and Jas. P. Swift, of
Dallas, for appellant.

Willis & West, of Dallas, and Germain Harris, of Greenville, for appellees.

SELLERS, Justice.

Mrs. C. B. Moyers brought this suit for
herself and as next friend of her two minor
children in the district court of Hunt county
against Texas Employers' Insurance Association to set aside an award of the Industrial
Accident Board and for compensation for the
death of her husband, J. B. Moyers, who was
an employee of the Texas Refining Company
at Greenville, Tex., and which company was
a subscriber with the Texas Employers' Insurance Association under the terms of the
Workmen's Compensation Law of this state
(Vernon's Ann. Civ. St. art. 8306 et seq.). The
injury alleged to have been sustained by J.
B. Moyers, as described in plaintiffs' petition,
is as follows:

"That on or about the 30th day of June,
1931, the said Jacob B. Moyers was employed
by the said Texas Refining Company, and as
such employee was engaged in the usual and
customary duties for said Company, and was
doing and performing the work, duties and labor that he was directed to do by his said
foreman, and while so employed and while so
engaged in said work for said Company in
Hunt County, Texas, he sustained and received an accidental injury. That on said day
and date, which was an extremely hot after-

noon, plaintiff was working between two buildings in the hot sun with the rays of the sun beating directly down upon him, and was working near the west side of the East Building, which was constructed of tin and iron, that is the sides and roof, that the rays of the sun beating on the side of said building reflected on the body of Jacob B. Moyers as he was at work on said date; that the reflection of said sun rays made it a hotter place for plaintiff than for any other person on that job, and hotter than the general public was accustomed to in that vicinity at said time, and subjected him to greater hazard from the heat of the sun than that to which the general public was ordinarily subjected; that at the time of said accidental injury and immediately prior thereto the said Jacob B. Moyers was doing hard manual labor and had been painting heavy iron doors which were laid flat upon what is commonly known as horses about two feet off the ground and was an inexperienced painter; that the paint and iron doors, with his body and face directly over same while using a paint brush, and the rays of the sun reflecting directly on to said paint and iron doors and reflecting back into his face and body made it a hotter place to him than to the general public in said vicinity on said date; by reason of all of the allegations herein the said Jacob B. Moyers, now deceased, suffered an accidental injury and what is known as a heat-stroke, from which stroke he died on the road to the hospital in Hunt County, Texas; that said injury resulted in his death. That he sustained the injury while working for the Texas Refining Company; and that he and said Company at the time of said injury was engaged in work, and deceased was in the course of his duties as directed by his said foreman at said time and occasion, and while in the usual and customary duties that he was ordered to perform, and while doing said work at said time and occasion in Hunt County, Texas; that said injury resulted in his death, which was a direct and proximate result of the injury sustained on said time and occasion.

"Plaintiffs would further allege and show to the court that the said Jacob B. Moyers, deceased, was in the course of his employment for the said Texas Refining Company in Hunt County, Texas, on the day and date of the above alleged injury; that the said injury of Jacob B. Moyers, deceased, originated and had to do with the business of the said Texas Refining Company, and was sustained by him while in and about the furtherance of the business of the said Texas Refining Com-

pany, and while doing the usual and customary duties of said employer."

The defendant's answer contained a general demurrer, certain special exceptions, general denial, and specially alleged as follows:

"Now comes defendant, for further and special answer, if same be necessary and without waiving its foregoing pleas, exceptions and demurrers but still insisting upon same and respectfully shows to the court that the alleged death of Jacob B. Moyers was due to an act of God and in the alternative defendant alleges that if the said death was not due to an act of God, that then and in that event the death was due to some other than damage or harm to the physical structure of his body and such diseases or infection as naturally result therefrom resulting from an accidental personal injury, and further in the alternative, defendant alleges that the hazards of the employment of said Jacob B. Moyers was not the direct or proximate cause of his alleged death."

The plaintiffs offered evidence to show that June 30, 1931, was a very hot day, the report of the government weatherman showing that the heat as recorded by him at about 2 o'clock on this day in Greenville, Tex., was 102 degrees. There is also evidence that this general degree of heat was exceeded by reason of the special situation and conditions at the very place where the deceased was doing the painting by twenty-five degrees. That the deceased worked at this place from some time in the morning until 3 or 3:30 in the afternoon. That on completing this work in the afternoon he went to a building some 150 yards away and continued to perform some duties for the refining company there. That this last place of work was in the building where the heat was about the same as that generally prevailing in that vicinity. That deceased only remained in this building about thirty or forty minutes when he returned to the main shop of the company to get some tools, and, as he stepped into this building, he fell, and died a few minutes later in an ambulance on the way to a hospital. That he was not perspiring at the time he fell except a little under his arms. That at the time of his death his temperature was around 107 degrees. The deceased was about forty-nine years of age, and his wife testified that he had never been sick except for a spell or two of the flu a year or so before. A doctor testified from a hypothetical question that in his opinion the deceased died as the result of a heat stroke. There was evidence offered by the defendant to the ef-

fect that deceased had been complaining for some time of feeling bad. That only a year or so before he gave out while chopping cotton and complained of pains in his chest and shortness of breath and a doctor testifying on behalf of appellant on a hypothetical question gave it as his opinion that the deceased died from heart trouble. The court submitted the following issues to the jury:

"No. 1: Do you find from a preponderance of the evidence that the death of J. B. Moyers was caused by an injury sustained in the course of his employment by the Texas Refining Company?"

Answer: "Yes."

"You are instructed that 'act of God' as used in this charge, means that the injury is due directly and exclusively to natural causes, without human intervention, where no amount of foresight or care which could have been reasonably required of the Texas Refining Company could have prevented his injury.

"Now, bearing in mind the foregoing instruction, you will answer the following question:

"No. 2: Do you find from a preponderance of the evidence that the death of the said J. B. Moyers was due solely to an act of God?"

Answer: "Yes."

"No. 3: Do you find from a preponderance of the evidence that J. B. Moyers was, at the time of his death and immediately prior thereto, in the performance of duties for the Texas Refining Company that subjected him to a greater hazard from the heat of the sun than ordinarily applied to the general public at that time?"

Answer: "Yes."

"No. 4: If you have answered 'Yes' to question No. 3, above, then do you find from a preponderance of the evidence that such fact caused the said J. B. Moyers to suffer what is commonly called a heat stroke?"

Answer: "Yes."

"No. 5: If you have answered 'Yes' to question No. 4 above, then do you find from a preponderance of the evidence that the death of the said J. B. Moyers was caused solely by said heat stroke?"

Answer: "Yes."

"No. 6: Do you find from a preponderance of the evidence that the death of the said J. B. Moyers was caused by some natural disease?"

Answer: "No."

Upon the answers of the jury to the issues submitted and the undisputed facts the court entered judgment for the plaintiffs for the sum of $7 per week for the term of 360 weeks, one-third of which amount was allowed plaintiffs' attorneys as their fee. From this judgment, the defendant has duly prosecuted this appeal.

Appellant's first proposition is directed at the court's definition of the term "injury sustained in the course of employment" in that it did not contain the statement "that an injury caused by an act of God is not to be considered as an injury sustained in the course of employment unless the employee is at the time engaged in the performance of duties that subject him to a great hazard from the act of God responsible for the injury that ordinarily applies to the general public." The court's definition of the term "injury sustained in the course of employment," as given in the charge to the jury, is as follows:

"You are instructed that wherever the term 'injury sustained in the course of employment' is used in this charge, it shall mean all injuries of every kind and character having to do with, and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs of business of his employer, either upon the employer's premises, or elsewhere."

Article 8309, omitting provisions not pertinent to the points raised, provides:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include: 1. An injury caused by the act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public. * * * 4. But shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

It will be observed that the definition of the term as given by the court is in the language of the statute and has been approved. Texas Employers' Ins. Ass'n v. Owen (Tex. Com. App.) 298 S. W. 542. The effect of the first provision of the statute above quoted, in our opinion, is not to change the definition of the term "injuries sustained in the course of employment" in cases where the injury complained of is the result of an act of God, but only has a legal effect of placing upon the injured

employee, or his beneficiaries in case of his death, the burden of establishing the additional ultimate fact that the injury was sustained by the employee while engaged in the performance of duties for his employer that subjected such employee to a greater hazard from the act of God responsible for the injury than ordinarily applies to the general public. The requirement of the statute in this particular was fully met by the court with submission to the jury of special issue No. 3.

▮ The appellant complains of special issue No. 6 as contained in the charge of the court in that it places the burden of proof upon appellant. We regard the issue as immaterial to the judgment entered by the court in this case. The issue was evidently intended by the court to present to the jury the appellant's defense as gathered from its evidence offered on the trial. Appellant's pleadings, however, raise no such defense and the issue therefore was uncalled for as an affirmative defense of the appellant. The evidence offered by appellant as to a heart attack being the cause of Moyers' death was admissible to go to the jury and be considered by them in passing on the general issue made by the pleadings of the appellees that the deceased's death was caused by a heat stroke. Certainly it would not be incumbent upon the appellees, after having established by a preponderance of the evidence that the cause of the death of the deceased was due to heat stroke, to then go further and establish by a preponderance of the evidence that the deceased did not die from any natural disease. The issue as submitted and found by the jury does not present reversible error.

Complaint is made that the preponderance of the evidence is against the jury's findings upon some of the material issues submitted by the court. We have carefully reviewed the evidence and have concluded that the evidence is sufficient to support each of the jury's answers to the issues submitted.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

▮ We are cited by appellant in its motion for rehearing to the rule which requires in this character of case the court to submit to the jury all affirmative defenses raised by the evidence of the appellant although its answer contained only a general denial. U. S. Fidelity & Guaranty Co. v. Baker (Tex. Civ. App.) 65 S.W.(2d) 344. We think the above rule has no application in a case where the evidence, as in this case, tends only to negative the cause of action of a plaintiff which has been affirmatively submitted to the jury by the court. Texas Indemnity Co. v. Perdue (Tex. Civ. App.) 64 S. W. 386. Therefore appellant's motion for rehearing will be overruled.